Please get ready for our next case, 25-1354, the State of Charles Anthony Hurtado v. Smith. Good morning, may it please the court. My name is Liana Orshan, and along with my colleague David Lane at council table, we represent the plaintiff appellant, the State of Charles Hurtado. And our client, Bernie Hurtado, who is the personal representative of the state, is also here in the courtroom along with other members of the Hurtado family. So to understand why they just... Just to be clear, this is not all family. This is not, as far as I know, this is not the whole family, but luckily we do have some family members in support. Speak into the microphone. Yes, is that better? Twist it up a little, there you go. How's that? Good. All right. So to understand why the district court erred in granting summary judgment to Dr. Smith in this case, in which he failed to provide the necessary treatment for Mr. Hurtado's abscess leading to Mr. Hurtado's death, it's important to break down the claim of deliberate indifference into its component parts. What is the difference between deliberate indifference and negligence? It is the state of mind. It's what, I'm sorry? It is the state of mind. So inadequate treatment is the basis for both a negligence claim and a deliberate indifference claim. In negligence, the state of mind requirement is negligence. In deliberate indifference, the state of mind requirement is knowledge or at least recklessness. So the difference is that for negligence, the doctor might not necessarily know or recklessly disregard that the wrong treatment is being provided, whereas in deliberate indifference, the doctor knows at the time that the inadequate care is provided that this is not the appropriate and necessary treatment to be provided. So no matter how hard the person works to cure whatever the ill is, if he's negligent, that's also deliberate indifference? Is that what you're saying? I'm saying that if someone is negligent, they're not necessarily aware that they are providing the incorrect care, whereas in deliberate indifference, we must prove that the doctor knew at the time he was providing the incorrect care that it was the incorrect care. And that is exactly what we have in this case with Dr. Smith conceding that he knows that the treatment for an abscess is not the treatment that he provided. For an abscess, it needs to be completely drained, and discharge on oral antibiotics is not appropriate care. Isn't that the whole point, though, that Dr. Smith thought it might be just a large mass, that it wasn't necessarily a walled-off abscess of pus, and so he did the needle aspiration, as a doctor might do, to find out whether or not his inclination was correct or whether or not an IND was required? That is what Dr. Smith testified in this case. For the first time, he had made a statement that he did not diagnose an abscess, but because this is summary judgment, we must not evaluate the credibility of the witness and leave that to the jury. The objective evidence shows that a jury could easily find that Dr. Smith was aware, at the very least, and most likely did in fact diagnose that it was an abscess. That evidence includes Dr. Adan's notes at the time of the first visit. Dr. Adan was the ER physician that admitted and saw Mr. Hurtado initially. Dr. Adan writes twice he had two separate discussions with Dr. Smith. The discussion that he had with Dr. Smith is after Dr. Adan noted that there's an abscess with osteomyelitis, as shown by the CT results. But Dr. Adan, isn't the problem for you, though, that Dr. Adan is actually the one that signed off on releasing Mr. Hurtado back to prison? And if he had done a needle aspiration, and if his conditions continued to escalate, then he could have been brought back. But that wasn't Dr. Smith's fault. If anybody's fault, wasn't it Dr. Adan's for releasing him back to the prison? I believe it was both. Their conduct was objectionable, both of them. The reason that I believe, and the reason we sued Dr. Smith, I believe he is more culpable, is because Dr. Adan was acting on his recommendation to discharge Mr. Hurtado without any further procedures, such as an incision and drainage. He was acting on Dr. Smith's recommendation. He was acting on Dr. Smith's recommendation, thank you. And the discharge notes show that Dr. Adan discharged Mr. Hurtado with a diagnosed abscess. And that is after Dr. Adan had two conversations with Dr. Smith. Is there anything inherently problematic with beginning the treatment of an abscess with a needle aspiration? The beginning might not necessarily be the problem. It's the failure to complete the drainage, where Dr. Smith would have known that there is additional care that needs to be provided. Instead, he only got a tiny bit of pus, if that. He realized he didn't locate the pus pocket, and he didn't complete the drainage. By his own concession, that is not the appropriate and necessary care for an abscess. And again, he knew there was an abscess. That's the disputed fact. The objective evidence in the hospital notes, in the record that Dr. Adan completed, show that there was absolutely no diagnosis considered other than an abscess. No, that's not quite correct. The doctor said at the time of his examination, there was no indication of a liquefied cavity. And, I mean, it seemed to me that they were really trying to figure out what was going on with this individual. And if that's going to be deliberate indifference, as opposed to making a mistake or not going quite far enough, what have we done to the profession? Your Honor, that is Dr. Smith's testimony in his deposition. Well, that's his testimony. He's the one that's being sued, and he's the one that was giving treatment. And he gave treatment over and over again, and went back and rechecked, and then finally went the way he went. If we were to defer to Dr. Smith's testimony, which is exactly what the district court did, we would be making improper credibility determinations. If you look at the contemporaneous notes, only the- Well, the distinction is still between deliberate indifference and negligence. You haven't answered that question yet. Dr. Smith knew there was an abscess. He thought there might be. That is his testimony. That is a credibility determination. I am telling you that we disbelieve Dr. Smith. A jury could disbelieve Dr. Smith. If you look at the contemporaneous notes that were from the hospital record, there is absolutely no indication that Dr. Smith or anyone did not diagnose him with an abscess. And then if you look-  Oh, I apologize. Are there contemporaneous notes by Dr. Smith himself? There are notes from Dr. Smith when Mr. Hurtado was admitted later that evening for the second time. Dr. Smith again saw Mr. Hurtado. Dr. Smith writes in those notes that his story- He writes- And I'll tell you exactly what he writes because I think it's important. If I can turn this page. He writes, under history of present illness, that aspiration was attempted earlier today with no abscess cavity located. Under diagnostic imaging, he notes abscess of right perineal area. Under procedures, he notes attempted aspiration earlier today with no fluid returned. Under assessment, he states right perineal abscess with extension to ischial tuberosity. So in Dr. Smith's own notes from later that evening, there is no indication that he's changed his mind and now realizes it is an abscess and that previously he had not diagnosed an abscess. There is only- But what he's saying, just to make sure I'm understanding this correctly, what the notes are saying is now he determines there's a perineal abscess. He doesn't say that there was one earlier, but also he doesn't say that there wasn't, that he didn't think there was one earlier. Well, I believe we can infer that had he not diagnosed the abscess earlier, the earlier visit, and he's now diagnosing an abscess, that there would have been some indication that I previously saw a mass, but now I'm realizing it's an abscess. There is absolutely nothing in those notes that he changed his mind, that he's reaching a diagnosis that he didn't reach before, especially when he's talking about the history of the present illness, when he's talking about- and he knows that the abscess cavity wasn't located. He uses that term, no abscess cavity located. So- Yes, go ahead. In some study, when you started going through his notes, you mentioned a reference to a study showing a perineal abscess. Was that study done during the first visit or the second visit? That was the first visit, and that's the radiologist, the CT radiologist. The radiologist had an oral report to Dr. Adan saying that there was an abscess with osteomyelitis. That oral report was given to Dr. Adan before Dr. Adan had his discussion with Dr. Smith. Dr. Smith says he was guided by the CT findings when he was doing his needle aspiration. The CT findings weren't written up at that point, so the only CT findings he could be guided by was the oral report that the radiologist had given Dr. Adan. Dr. Adan must have passed it on to Dr. Smith. Dr. Adan describes those oral findings as the radiologist saying the CT shows an abscess with osteomyelitis. So yes, this is a link of inferences, and I really would appreciate you going with me on this link, but I do think it's very important not to take Dr. Smith's word for it that he did not locate the abscess cavity, which he says for the first time ever in this litigation. When he says he did not locate a perineal abscess, does the record indicate how he looked for it? Did he just do one aspiration? Did he do multiple aspirations? The hospital notes do not say. I believe it was just one aspiration, but it is not completely clear. Is there any expert testimony on whether one aspiration is sufficient to determine whether there is an abscess possible? Well, there is expert testimony that a needle aspiration is not the appropriate procedure once someone is aware that there's an abscess with osteomyelitis as shown by the CT. So plaintiff's experts say that there was no reason to even attempt a needle aspiration at the time that Dr. Smith did once the CT results are told to him that this is an abscess with osteomyelitis. So once he does that, however, he needs to complete the drainage. If he's trying to drain the abscess, he did not do that, and he knows he did not do it. If he's trying to diagnose, as he says he is now, he never finished the diagnosis. There is no indication that there's any other diagnosis than abscess. So if he's really telling the truth that this was an attempt to diagnose, why do the medical records not reflect anything other than the diagnosis of an abscess? And if I may, I'd like to reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors. Todd Drake on behalf of the appellee, Dr. Jerry Smith. Your Honors have touched right on Judge Kelly. You're directly on point with this. Sure thing. Judge Kelly, you're absolutely right. I'm happy to repeat that. The distinction here is what plaintiff has alleged and what their evidence has shown is a case of an alleged medical misdiagnosis of alleged negligence. There is no evidence that supports a deliberate indifference claim. There is no evidence that Dr. Smith consciously disregarded some risks to Mr. Hurtado, chose not to in any way treat it, chose not essentially to ignore it. The argument from plaintiff is that the medical care that was provided, mind you, there's no dispute Dr. Smith provided medical care. He provided a host of medical care, including a review of symptoms, speaking with the patient, obtaining a history, reviewing the labs, reviewing films, doing the needle aspiration, prescribing antibiotics, prescribing pain medication. What plaintiff, what the appellant wants to argue in this case is that that's inadequate care. They have that throughout their complaint. They have that throughout their brief. I see their argument a little differently. They're saying it's inadequate care if you know there's an abscess. And the argument is, one, that even though Dr. Smith testified that he didn't know there was an abscess, the jury can believe other evidence indicating he knew there was an abscess, such as the CT scan report and what the other physician had said. Second, that he, in fact, did testify that if there is a perineal abscess, he knew that the proper treatment is to drain it. So if that's the case, if there's no dispute that he knew what the proper care for perineal abscess was, then the issue is, could the jury find that he knew there was a perineal abscess? And so why don't you address that factually? Sure thing, Judge Hartz. I agree that's their argument. There is no evidence to support that argument. The CT report discusses, just as you said, Judge Packrich, a mass. It doesn't discuss anything about an abscess. Judge, or excuse me, Dr. Smith. There was the treating physician. Dr. Adan. Dr. Smith. Dr. Adan. Adan. I thought his notes say that the CT scan oral report said an abscess. That's the oral report he says that he received from the radiologist. That's correct. This goes back to. And that was a contemporary note about what. It was done after the, the note was done after this treatment was done, after Mr. Rotato had essentially left the facility. It's contemporaneous, but all this. But it was before the second visit. It was before the second visit. And to your point, Judge Hartz, that's exactly what happened. Dr. Smith testified that what he was looking at. He knew that there was a mass. He knew there was something there. That's the whole reason he did the needle aspiration. He was trying to diagnose what is going on with this patient. That's his testimony. It's appendix page 181 to 191. He, that's why he does the needle aspirations, trying and look for, as Judge Kelly talked about, a liquefied cavity. Essentially a walled off abscess. Under his testimony, there's no liability. I think plaintiff admits that. I'm trying to focus on whether there's evidence that he knew, was told by an authoritative source that there was an abscess. And what we have is a contemporaneous note before the second visit by Dr. Adan saying he was told by the radiologist, I guess, that the CT scan showed an abscess. Now, you said two things here. The report of the CT scan just says mass. It doesn't say abscess.  How do you deal with the fact that a note indicates that the radiologist had told Dr. Adan, who then consulted with Dr. Smith, that there was a mass? This is at the time of the second visit. This is when Mr. Furtado is returned back to the facility. At that point, he had increased pain. He was hypotensive. Again, this is Dr. Adan is, he actually consults with Dr. Smith again at this second visit. And that's when the decision is made to admit. That's when they, Dr. Smith, is thinking, okay, this is a pararechal abscess. There is concern here for something beyond just, you know, trying to diagnose what's going on. I'm trying to get the chronology right there. My understanding from those in counsel was that Dr. Adan's note indicates during the first visit he was told that the CT scan showed an abscess. And that's one fact. The other important fact is that Dr. Adan consulted with Dr. Smith and one would think, at least I think it's a reasonable inference, that Dr. Adan would report to Dr. Smith what he'd been told about the CT scan. It's really the distinction, Your Honor, between, there's no real question that there is an abscess there. That's not the question. The question is, was this a walled-off abscess that had this liquefaction? Was there a liquefied cavity? Because that is what then leads to the additional treatment, the IND. So the abscess, okay, then I misunderstood the medical testimony. I thought if it was an abscess, you have to drain it. No. I'm sorry. And perhaps it's a walled-off abscess, then it's not necessary to drain the walled-off? That's exactly what Dr. Smith explained in his testimony. That's exactly what he's looking for. He said this idea that he somehow conceded that if this was an abscess and he knew he was doing something wrong, that's just not correct. Plaintiff's counsel was asking him questions related to his expert report, the Dr. Schechter's report. Do you agree with Dr. Schechter on this? What Dr. Smith said was that, no, I don't agree with Dr. Schechter. In fact, this opinion about that I needed to somehow, the needle aspiration failed to go ahead and remove, totally drain this abscess, that's not even pertinent to this case. Because what I am trying to do is I am trying to diagnose, does he have a liquefied cavity? Does he have something that requires additional treatment, the incision and drainage? Dr. Smith testified, he said, had there been liquefied cavity, had I found that, I would have considered other treatment. I would have gone a different direction. But that did not exist. Did plaintiff's experts say even if it was walled-off, it should be drained? Well, that's the key, is if it's walled-off, it's drained. What plaintiff's experts are suggesting is that the moment anyone comes in with any sign of infection or an abscess like this, you need to immediately go to incision and drainage. That is a dispute of the standard of care. That really is the crux of this. They say this is the problem. Well, that would make him, that would make Dr. Smith liable for negligence. Exactly. But even though an expert witness may testify that Dr. Smith should have done this immediately, Dr. Smith did not concede that that was his knowledge at the time. Exactly right. He didn't have that knowledge. In fact, it wasn't they just didn't have that knowledge. He testified it was exactly opposite to that. What he found was there was no liquefied cavity. I mean knowledge of the proper treatment. Right, right. His knowledge of the proper treatment would be, had I found a liquefied cavity, a walled-off abscess, then yes, I would have considered an IND. I would have considered having him admitted. That's why when he returns later and now you've got the note in the chart, okay, now we've got some concern that this is a walled-off. Now they admit him. Now they have him in. It's the reason the next morning a surgery was done to drain that abscess. This is all part of the physician's workup. They're looking at what's going on with this patient. Why is he having these symptoms? That's exactly what Dr. Smith is doing is trying to diagnose those symptoms. He didn't say, oh, I knew that this was an abscess and I knew that my treatment of that was not appropriate to do it. That's just not supported by it. It gets back to, Your Honors, what the plan has demonstrated, and Ms. Horshon talked about this, they have to show some culpable state of mind. Their experts agree. They cannot say that Dr. Smith was doing anything to try and harm this patient. They both testify. They agree they cannot speak to Dr. Smith's state of mind. They can't say what he was thinking or that he was somehow consciously disregarding the risk. Their theory, if it's factually based, tell me if there's something wrong with their theory. Their theory is that there's evidence that Dr. Smith knew there was an abscess, and second, that Dr. Smith admitted that if there was an abscess, the proper treatment is to drain it surgically, however, immediately, not just aspirate. I agree that's their argument. The record evidence doesn't support that. If those facts were true, that there's evidence to support that Dr. Smith knew there was an abscess and that Dr. Smith admitted that if there's an abscess, he has to drain it, if that's true, would that not show deliberate indifference? Only if it was that he knew that this posed a risk to Mr. Hurtado and that he consciously chose to disregard that risk. Again, what you're talking about are different forms of treatment of a medical condition. It's a difference of opinion as to what is the proper treatment of the patient, and that's what they're challenging. Not the way I phrased it. The way I phrased it, there's no dispute about Dr. Smith's opinion. She's asserting two things. One is that Dr. Smith agreed that in X circumstance, the proper treatment is surgical, and second, that the circumstance leading to that requirement of treatment was there's evidence that Dr. Smith knew that was the situation at the time. Now, so I want to try to make sure where you two are differing. Sure. Do you agree that if she's factually correct in her assertions, that that would support the claim of deliberate indifference? No, because you're still discussing a choice of treatments. This court has recognized since Self v. Crum that a doctor's decisions about what forms of diagnostic techniques or treatments should be required. You're absolutely right on that principle. The question is the facts here, and she says that Dr. Smith acknowledged in his testimony that if he knew there was an abscess, he should have performed the surgery sooner. Do you disagree with that? I disagree that that's what he said in his deposition. Okay. In what way is that wrong? The evidence is that Dr. Smith, again, he's responding to these questions based on the plaintiff's expert report. Do you agree? And he says, no, I don't agree. In fact, he says, I don't think that's even pertinent to this case because what you're discussing over here, what Dr. Schechter, the plaintiff's expert is discussing, is not the facts of this case. In a hypothetical world, sure, if Mr. Hurtado had come in with a walled-off abscess and there's liquefied cavity and Dr. Smith says, I see that that's a walled-off abscess, there's a liquefied cavity there, I know that the treatment for that is incision and drainage, and then chose not to do that, that could support a deliberate indifference claim. That's not the evidence in this case. It's not even close to the evidence. Because there's no evidence that he knew it was a walled-off abscess. That's right. First of all, he specifically said, I found that there was no liquefied cavity here that required it. So that's the first step of it. And the jury could not disbelieve him based on other evidence in the medical record? The jury, again, I agree, this is not a credibility fight over Dr. Smith's deposition. That's not what the district court did here. He didn't rely on Dr. Smith's deposition testimony. What he really relied on, the district court relied on more than anything, was the expert report from plaintiff of Dr. Harris who said, that's right, reasonable physicians can disagree about how to treat this condition. What Dr. Smith did, his experts say that is appropriate treatment. Dr. Harris said, that's right, those are reasonable physicians, they can disagree on this. And that's exactly the point. Then it is not patently unreasonable, the care that was provided. There is no evidence that he knew of this and consciously chose to disregard that risk. So that's really the issue. Could a jury believe that Dr. Smith was not credible? Sure, but that's not the basis of the summary judgment. So this idea of, you know, she talked about this link of inferences that need to be made. Tenth Circuit law is clear. You have to have evidence. You can't have speculation. You can't ask, okay, come along with me on this idea that Dr. Smith is somehow not telling the truth, that he knows this, that he knows his treatment is inappropriate, that he knows the proper treatment needs to be done, and he chooses not to do it all because you just don't believe Dr. Smith. In fact, trying to reasonably infer, favorably in the state of Hurtado, that when Dr. Smith did the needle aspiration and he looks and there is pus that he sees, he says later in his deposition that it wasn't walled off. But why is it an unreasonable inference for a fact finder to infer that, given the escalation, what happened within a 24-hour period, what he was looking at, he must have seen that the pus was surrounded by tissue, that it was a liquefied cavity, notwithstanding what he later denied, based on the increase of pus that accumulates within a very short period of time? It would still only support a medical negligence claim, Judge Bachrach. What they're essentially saying is that he somehow should have known that this patient would deteriorate over time, that there was enough evidence there for him at the time to say, I need to go ahead and proceed to an incision and drainage. I need to admit this patient. I can't just prescribe him oral antibiotics. We can't send him back to the jail. All those I agree. That might support a negligence claim. That goes directly to it, and that's where their experts talk about the standard treatment. The standard care of treatment is incision and drainage. That's medical negligence. That's what they're arguing in this case. They do not argue. Their experts don't provide any evidence. There is no evidence in this record that Dr. Smith knew that this presented a risk to Mr. Hurtado, that this was some walled-off abscess, that he consciously disregarded that risk. They're asking him to make a set of inferences based on argument. Their expert testimony doesn't support it. Dr. Smith's deposition testimony doesn't support it. Based on that, Your Honors, we're going to ask that this court affirm summary judgment in favor of Dr. Smith. You have three and a half minutes. We absolutely disagree that this is not a credibility fight. In fact, that is the main failing of the district court order, that the district court did not even recognize that this is a credibility fight between Dr. Smith and the objective evidence, the circumstantial evidence that shows, in fact, Dr. Smith knew. But that still is not deliberate indifference. You can be stupid, but you're not deliberately indifferent. And he said specifically, time after time, I did not attempt to manage it by needle aspiration. I attempted to diagnose. And that's what he was doing. And he initially said that he did not find a liquefied pocket at that first point. So I just don't understand where we're going with this, because the absolute liability, if you make a wrong diagnosis, you're deliberately indifferent. That cannot be the rule. If all my kids are doctors, it would be disaster. He didn't make a wrong diagnosis as a mistake. Whoops, I made a wrong diagnosis. Like in SELF. In SELF, the symptoms would support a wide variety of different types of conditions. The doctor made a decision at the time that seemed reasonable and consistent with the symptoms, and there's absolutely no evidence in SELF that he did know it was, in fact, endocarditis. In this case, the objective evidence shows that Dr. Smith is not telling the truth. So there is no reason at summary judgment we should just go ahead and believe Dr. Smith's subsequent testimony. Well, why didn't you file a negligence, a malpractice action here? It's a public hospital. I'm sorry? He's a public employee, so he's immune under the CJIA. So initially we did, but we dismissed it once we had conclusive evidence that he was a public employee. I do want to make very clear that Dr. Smith said abscesses cannot be fully drained by needle. Antibiotics are inadequate to treat if there's a known liquefied pocket. Antibiotics are commonly considered inadequate to treat if there is a known pocket of pus. And then this is his deposition where he's denying that he identified that there was a pocket of pus, that he knew that there was a pocket of pus. But he had the CT findings. He had the oral report from this radiologist via Dr. Adon. That said, this is a map. Just a minute.  The CT scan did not definitively state what you're suggesting it stated. That was the recorded CT scan, which was recorded later. It was not in the notes at the time that Dr. Smith performed the aspiration. He had to rely on the oral report. The oral report is that there was an abscess with osteomyelitis. The fact that there was an abscess with osteomyelitis per the CT findings means that he knew there was an abscess. He knew the risk of not fully draining the abscess because it's osteomyelitis, a very dangerous bone infection that, in fact, can be fatal. And if you look at Schechter's report, he explains this whole timing of the CT report and why there is absolutely no way that Dr. Smith could have relied on the written CT report at the time. And I believe my time is up. But, again, I want to make very clear this is a credibility dispute. Thank you very much. I just wanted to ask you something just to make sure that I understand it. Is your assumption or position that an abscess is, by definition, walled off? I believe it's actually not. It is walled off. It's a liquid cavity. It's surrounded by tissue. Yes. So it's not the needle aspiration that would have revealed to Dr. Smith necessarily that there was an abscess. It's the other findings. It's the CT oral report that there was an abscess with osteomyelitis. That fully answers my question. Thank you so much.  Thank you, counsel. This is submitted. Counsel are excused.